[Civil No. 1270.  Filed July 5, 1912.]

[125 Pac. 704.]

In the Matter of the Application of THE VALLEY BANK OF PHOENIX for a Writ of Mandamus Against DAVID F. JOHNSON, State Treasurer of the State of Arizona.

1. STATES—FISCAL MANAGEMENT—GENERAL AND SPECIAL FUNDS.— Senate Bill No. 29 of the special session, sections 7 and 8, provides for a general fund and special funds in the state treasury. Section 9 provides that no transfers from one fund to another shall be made unless expressly authorized by law. Section 10 provides that no sum in excess of the sum appropriated for any purpose, or credited to any specific fund, shall be paid out from any money in the custody of the state treasurer. Sections 11, 12, and 13 provide a method of bookkeeping by the treasurer, in effect, requiring all money to be carried in a cash fund or account on which all warrants are to be drawn and from which they are to be paid. *Held,* that sections 11, 12, and 13 are inconsistent with the previous sections expressly keeping the different funds separate and distinct, and, since they merely provide a method of bookkeeping, will be regarded as advisory only and disregarded, and hence state road fund warrants cannot be paid by the treasurer unless he has money in his hands belonging to the state road fund, or the general fund, with which to make such payments.

2. STATES—FISCAL MANAGEMENT—WARRANTS.—Senate Bill No. 8 of the special session, section 7, provides that there shall be annually raised by taxation for the state road tax fund a specified sum, and that twenty-five per cent thereof for the year ending June 30, 1913, shall be used in paying the deficit in that fund for the year ending June 30, 1912, and that no obligation shall be assumed or expenses incurred under that act within any fiscal year, in excess of the levy therein provided for, and the money actually collected under such levy. Senate Bill No. 29 of the special session, section 13, provides that state warrants for the payment of which the treasurer has no funds on hand shall be indorsed by him when presented for payment and shall thereafter draw interest. *Held,* that the provision of Senate Bill No. 8 against obligations in excess of the levy had no reference to the deficit already existing, and that warrants for obligations incurred prior to June 30, 1912, should be indorsed by the treasurer when presented for payment, but that warrants for obligations incurred after that date should not be so indorsed, because it cannot be known what money will be actually collected during the fiscal year ending June 30, 1913.

Original application by the Valley Bank of Phoenix for a writ of *mandamus* against David F. Johnson, State Treasurer. Writ issued.

The facts are stated in the opinion.

Mr. C. F. Ainsworth, of Phoenix, for Applicant.

Mr. G. P. Bullard, Attorney General, for Respondent.

ROSS, J.—The petitioner alleges: That it is the owner and holder of two state road fund warrants, one for $74.75, and one for $2,779.20, both dated June 12, 1912; also, one general fund warrant of same date for $70. That it presented said warrants to respondent, Johnson, as treasurer of the state, for payment, and that payment was refused. That, after payment was refused, demand was made of the treasurer to register and indorse warrants not paid for want of funds, and that this demand was likewise refused. Petitioner further alleges that the treasurer has in his hands public funds belonging to the state aggregating in amount more than sufficient to pay the warrants presented and all outstanding warrants issued prior to the date of said warrants, and that the refusal of the treasurer to pay or register and indorse warrants was arbitrary, illegal, and a breach of duty. Then follows prayer for alternative writ of *mandamus,* which was issued.

The treasurer's answer is: (1) That he has no money in the state road fund, or in the general fund of the state. (2) That the road fund warrants constitute a part of a deficit in the state road fund for the fiscal year ending June 30, 1912. That the first legislature of the state at the special session passed an act known as Senate Bill No. 8, "relating to the construction, maintenance and improvement of state roads and bridges; creating the office of state engineer, prescribing the duties thereof and compensation therefor; fixing a tax levy and making appropriation to carry out the provisions of this act, and authorizing and directing the expenditure of such appropriation," which act, among other things, provided as follows: "Provided; that twenty-five per cent. (25%) of the 'State Road Tax Fund,' herein provided for, for the fiscal

year beginning July 1, 1912, and ending July 1, 1913, shall be subject to *the* [be] paid out, upon the authority and under the direction of the State Board of Control, upon the claim approved by the State Engineer and the Board of Control and audited by the State Auditor, for any work done under the authority of the territory of Arizona, or the State of Arizona, in the construction, reconstruction, repairing, improving, and maintaining of public highways, roads, and bridges prior to July 1, 1912.'' He further states that none of the taxes mentioned above has been collected. He further states that the only authority he has to pay said warrants is by virtue of sections 12 and 13 of an act passed at the special session of the legislature, known as Senate Bill No. 29, entitled ''An act defining and providing the powers and duties of the state treasurer, permitting him to appoint a deputy and stenographer and prescribing their duties and compensation; defining what shall constitute the general fund; providing how other funds in the state treasury shall be carried and credited by the state treasurer and directing the manner and method of payment by the state treasurer of state warrants out of public moneys in his custody or possession and the manner of meeting outstanding warrants; and providing the manner in which the receipts and expenditures of the public moneys shall be published by the state treasurer.'' The treasurer, in his answer, questions the validity of this last-mentioned act for the reason, as he says, that it treats of a subject not related to or included in the governor's call of the special session.

For the reasons given below, we do not deem it necessary to pass on the question as to whether the subject matter contained in Senate Bill No. 29 is germane to any topic of legislation mentioned in the governor's proclamation calling the special session of the legislature. The sections of that act that are important in determining the question before us are:

''Sec. 7. The general fund consists of money received into the treasury and not especially appropriated to any other fund, and out of such fund all salaries of state officers, and expenses incident to the offices thereof, as authorized by law shall be paid.

''Sec. 8. All funds of the state, other than a general fund, and all moneys received and credited to such funds shall be

considered and carried as appropriations for the use and benefit of such purposes for which such funds were created.

"Sec. 9. No transfers of money or moneys, or credit, shall be made from one fund to another, or from one appropriated sum to another, unless such transfers shall [be] expressly authorized and directed by law.

"Sec. 10. No sum of money or moneys, in excess of the amount appropriated for any purpose, or credited to any specific fund or funds, shall be paid out of, or from, any of the public money or moneys in the custody or possession of the State Treasurer.

"Sec. 11. All sums appropriated, and each and every state fund, shall be considered and carried on the books of the State Treasurer as a debit against the public money or moneys in the custody or possession of the State Treasurer, and against the credit of the state of Arizona.

"Sec. 12. All public money or moneys in the custody or possession of the State Treasurer shall be debited against the State Treasurer under the head of one account entitled 'cash' or 'cash fund or account' in a suitable book for that purpose to be known as the cashbook; and all funds and appropriations of money shall be considered and carried as charges or debits against such 'cash' or 'cash fund or account,' and all warrants and payment of public money shall be met and paid from such 'cash' or 'cash fund or account' and as warrants and payments of public money or moneys are met and paid as authorized and directed by law, such 'cash' or 'cash fund or account' shall be credited to the amount of such warrants or payments.

"Sec. 13. All state warrants shall be paid by the Treasurer in the order in which they are issued upon presentation; provided, that they are drawn in accordance with the state laws. If upon presentation to the Treasurer of any warrant he has not the funds in hand to pay the same, he shall indorse the day of its presentation upon the back of the warrant, and whenever it is paid, interest, at the rate of five (5) per cent. per annum, in lawful money of the United States shall be allowed from said day, and paid in addition to the principal thereof; provided, however, that the interest paid under and by the authority of this section shall be paid from the general fund.''

It will be seen that sections 7 and 8 keep intact all the different funds provided by the different revenue laws of the state; that section 9 prohibits the use of the money in one fund to pay warrants drawn on another and different fund; that section 10 prohibits the payment of warrants in excess of the sum appropriated or credited to any specific fund or funds.

The plain language of these sections forces the conclusion that each fund provided by law shall remain intact, without diminution except by warrants legally drawn on that fund; or, differently stated, that no money or credits of one fund shall be diverted to or used in the payment of a warrant drawn against another fund. Granting that the legislature possessed the power to transfer to the general fund all of the moneys of the state of Arizona coming to it from the territory of Arizona, that had been assessed and collected for special uses and purposes and that had been left unexpended at the end of the fiscal year 1911 and 1912, no attempt of the kind is manifest in this act. On the contrary, if the intent of the law-making body is to be drawn from the language it used, separate funds are to be kept inviolate. This was probably done to meet that provision of the state constitution (section 3, article 9) as follows: ". . . No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the tax, to which object only it shall be applied."

If this provision is prospective and has relation to taxes laid by virtue of state legislation only, it does not change the situation, for, as above observed, act 29 does not purport or attempt to transfer the funds on hand to the general fund of the state, but does provide that "No transfers of money or moneys, or credit, shall be made from one fund to another, or from one appropriated sum to another, unless such transfers shall [be] expressly authorized and directed by law." Section 9.

Sections 11, 12 and 13 provide a method of bookkeeping by the treasurer, which method, if followed, would have the effect of defeating or abrogating the provisions of the preceding sections 7, 8, 9, and 10, just analyzed. The scheme of bookkeeping is that all the moneys of the state shall be carried as "cash" or "cash fund or account," and that all warrants of

whatever kind, when legally drawn, should be paid on presentation out of that fund. If this inconsistency was substantive law, it might be necessary to hold the law void; but, inasmuch as the bookkeeping feature of it may be considered as only advisory to the treasurer and not of the substance of the law, we hold that sections 11, 12, and 13, in so far as they conflict with the provisions of sections 7, 8, 9, and 10, are void and of no effect.

The imperative demand of the law is that the treasurer safely keep the moneys of the state in separate funds, and any scheme or device of bookkeeping that has for its purpose the prevention of his doing that cannot be allowed.

We therefore conclude that it is not the duty of the treasurer to pay said warrants unless he has funds in his hands belonging to the state road fund and the general fund, sufficient with which to make such payments. It is, however, his duty to register and indorse said warrants, as provided by law, providing there has been an appropriation sufficient to pay them.

Senate Bill No. 8, in the proviso above quoted, has provided for a deficit that occurred in the state road fund for the fiscal year ending June 30, 1912, which it had the power to do under the constitution. See Const., sec. 4, art. 9.

Section 7 of that act provides that there shall be raised annually by taxation for the State Road Tax Fund the sum of $250,000, and that twenty-five per cent thereof, or so much thereof as may be necessary for the year ending June 30, 1913, shall be used in paying the deficit in that fund for the year ending June 30, 1912. There is in said section this further proviso: "That no obligation shall be assumed or expense incurred under the provisions of this act, within any fiscal year, in the amount of any sum in excess of the levy herein provided for and the money actually collected under said levy."

We take it that the obligations that shall not be "assumed or expenses incurred . . . within any fiscal year . . . in excess of the levy herein provided for and the money actually collected under said levy" has reference to future obligations and not to the deficit already existing for the year ending June 30, 1912.

We conclude from this provision of that act that it was the plain intention of the legislature not to permit any deficit to occur in any fiscal year in the future in the state road tax fund, by making the assumption of any obligation or the incurring of any expense in excess of the money actually collected under the levy for that purpose illegal.

We hold, therefore, that all warrants against the general fund, if there is no money with which to pay them but an appropriation therefor, when presented, to the extent of such appropriation only, should be registered and indorsed as provided by law; that all road fund warrants drawn for obligations existing against the state prior to June 30, 1912, should likewise be registered and indorsed as provided by law; that road fund warrants for obligations contracted during the current fiscal year should not be registered and indorsed, as it cannot be known what money will be ''actually collected,'' and therefore the appropriation is not for any definite or fixed sum.

Let the mandate issue in accordance with the views herein expressed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.